UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
MARTIN DEKOM, KENNETH JACOBY, and
ROBERT PENDLETON,

                        Plaintiffs,

        -against-

                                              MEMORANDUM & ORDER
NEW YORK, ANDREW CUOMO, Governor,             12-CV-1318(JS)(ARL)
ERIC SCHNEIDERMAN, Attorney General,
NEW YORK STATE BOARD OF ELECTIONS,
JAMES WALSH, Commissioner, EVELYN
AQUILA, Commissioner, DOUGLAS KELLNER,
Commissioner, GREGORY P. PETERSON,
Commissioner, NASSAU COUNTY BOARD OF
ELECTIONS, LOUIS SAVINETTI, Republican
Commissioner, and WILLIAM BIAMONTE,
Democratic Commissioner,

                        Defendants.
---------------------------------------X
APPEARANCES
For Plaintiffs:
Martin Dekom                  Martin Dekom, pro se
                              34 High Street
                              Manhasset, NY 11030

Kenneth Jacoby                Kenneth Jacoby, pro se
                              3016 Roxbury Road
                              Oceanside, NY 11572

Robert Pendleton              Robert Pendleton, pro se
                              2895 Charlotte Drive
                              Merrick, NY 11566

For Defendants:
State Defendants              Ralph Pernick, Esq.
                              N.Y. State Attorney General's Office
                              200 Old Country Road, Suite 240
                              Mineola, NY 11501

County Defendants             Peter Laserna, Esq.
                              Nassau County Attorney's Office
                              One West Street
                              Mineola, NY 11501

SEYBERT, District Judge:

Plaintiffs Martin Dekom, Kenneth Jacoby, and Robert Pendleton ("Plaintiffs") commenced this action pro se on March 16, 2012 against the State of New York, Andrew Cuomo as Governor of the State of New York, Eric Schneiderman as Attorney General of the State of New York, the New York State Board of Elections, and Commissioners James Walsh, Evelyn Aquila, Douglas Kellner, and Gregory P. Peterson (the "State Defendants"), and the Nassau County Board of Elections, Louis Savinetti as its Republican Commissioner, and William Biamonte as its Democratic Commissioner (the "County Defendants," and together with the State Defendants, "Defendants"), asserting claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., the Rehabilitation Act, 29 U.S.C. § 701, et seq., the Voting Rights Act, 42 U.S.C. § 1973, et seq., the Uniformed and Overseas Citizens Absentee Voting ("MOVE") Act, 42 U.S.C. § 1973ff-1, and the First, Fourteenth, and Fifteenth Amendments to the U.S. Constitution under 42 U.S.C. § 1983 arising out of provisions of New York State's Election Law related to the designation of candidates for political office. (Docket Entry 1.)

Pending before the Court are the following motions: (1) a motion to dismiss filed by the State Defendants (Docket Entry 26); (2) a motion to dismiss filed by the County

Defendants (Docket Entry 27); (3) Plaintiffs' motion seeking the undersigned's recusal and the referral of this action to a three-judge panel (Docket Entry 34); (4) Plaintiffs' motion to "strike" the County Defendant's untimely opposition to Plaintiffs' recusal/three-judge panel motion (Docket Entry 54); and (5) Plaintiffs' motion to "strike" the State and County Defendants' reply briefs in support of their respective motions to dismiss (Docket Entry 59).

For the following reasons, the motions to dismiss are both GRANTED, and all of Plaintiffs' motions are DENIED. This Memorandum and Order will also address Plaintiffs' request for default (Docket Entry 40), which, although already properly denied by the Clerk of the Court, Plaintiffs still believe is pending (Docket Entry 48).

BACKGROUND

I.   Statutory Framework

Article 6 of New York's Election Law governs how political parties select the candidates that will represent them in a general election. See N.Y. ELEC. LAW § 6-100. To run as a party's candidate in a general election, the candidate must first be nominated by the party via a primary election. Id. § 6-110; see also id. § 1-104(9) (defining "primary election" as the "mandated election at which enrolled members of a party may

vote for the purpose of nominating party candidates").[1] With limited exceptions, in order to run in a primary election, an individual must be designated as a candidate for party nomination via a "designating petition." Id. § 6-118. An individual may be designated only if he: (1) is a member of the political party seeking to designate him; (2) is a citizen of the State of New York; (3) is eligible to be elected to public office; and (4) meets all statutory and constitutional qualifications for the particular position. Id. §§ 6-120, 6-122.

A designating petition must contain a certain number of signatures from enrolled party members. The number of signatures needed varies depending on the public office to be filled. Id. § 6-136. For example, petitions for potential candidates for the U.S. House of Representatives must be signed by the lesser of 5% of the enrolled voters of the party residing in the congressional district or 1,250 individuals, id. § 6-136(g), and petitions for potential candidates for the New York State Assembly must be signed by the lesser of 5% of the enrolled voters of the party residing in the assembly district

---

[1] Generally, members of the party may vote in the primary election via absentee ballot. Id. § 8-400(1). An individual may not vote via absentee ballot, however, in primary elections for party positions. Id. § 8-400(9). This restriction applies to military personnel as well. Id. § 10-108(1)(a).

or 500 people, id. § 6-136(i).[2]  Each signature must be witnessed by an enrolled party member or a notary public or commissioner of deeds.  N.Y. ELEC. LAW § 6-132.[3]  Voters may not sign more than one petition for the same office or position.  N.Y. ELEC. LAW § 6-134(3).[4]

Each petition must contain: (1) the name and residence of the potential candidate as well as the public office for which he is being designated; (2) each signer's name, residence, town or city, and the date of his or her signature; and (3) either a witness statement or the signature of a notary public or a commissioner of deeds.  Id. §§ 6-130, 6-132.  A sample designating petition that complies with the requirements of Section 6-132 is available on the New York State Board of Elections website at http://www.elections.ny.gov/NYSBOE/download

---

[2] For the 2012 election, in order to comply with the MOVE Act, the period for filing designating petitions was reduced from 38 days to 28 days and the number of signatures required was reduced by 25%.  (See Laserna Decl., Docket Entry 27-2, Ex. B.) The petitioning period for the 2012 election ran from March 20, 2012 through April 16, 2012.  (Am. Compl. ¶ 8.)

[3] Section 6-132(2) requires that the witness be a resident of the political subdivision in which the office or position is to be voted.  However, this residency requirement has been declared unconstitutional by the Second Circuit.  See Lerman v. N.Y.C. Bd. of Elections, 232 F.3d 135 (2d Cir. 2000).

[4] If a voter does sign more than one petition, then if the signatures "bear the same date, [they] shall not be counted upon any petition, and if they bear different dates[, they] shall be counted in the order of their priority of date."  N.Y. ELEC. LAW § 6-134(3).

/law/DesignatingPetitionNoLines.pdf.[5]

Any petition for public office or a party position submitted to a local board of elections[6] is "presumptively valid" so long as it is in "proper form" and appears to bear the requisite number of authenticated signatures. N.Y. ELEC. LAW § 6-154(1). Any voter registered to vote for such public office or party position may submit written objections to a designating petition. Id. § 6-154(2). Any such objections must be received within three days after the petition is filed, and specifications of the grounds for those objections must be filed within six days thereafter. Id. The local board of elections reviews the objections; however, its authority is strictly ministerial--i.e., it has "no power to deal with questions of fact or with objections involving matters not appearing upon the face of the petition." Schwartz v. Heffernan, 304 N.Y. 474, 480, 109 N.E.2d 68, 69 (1952); see also In re Wicksel v. Cohen, 262 N.Y. 446, 449, 187 N.E. 634 (1933) (distinguishing between ministerial and judicial acts as follows: "where the law prescribes the rule to be followed so as to leave nothing to the exercise of judgment or discretion, the act is a ministerial

---

[5] The sample is only provided in English.

[6] In New York, there is a board of elections for each county. N.Y. ELEC. LAW § 3-200(1). Typically, each board consists of two election commissioners, id. § 3-200(2), who are appointed by the county legislative body, id. § 3-204(4), upon recommendation by each of the major political parties, id. §§ 3-200(2), 3-204(2).

act" whereas "where the act involves the exercise of judgment or discretion in determining whether the duty exists, the act is judicial"). If a board determines that a petition is invalid, it must notify the objector and the candidate, N.Y. ELEC. LAW § 6-154(3), who may then contest the board's determination in a special proceeding in state court, id. §§ 16-100, 16-102.

## II.  Factual Background

The Amended Complaint is comprised largely of descriptions of the applicable law and conclusory allegations, which are "not entitled to the assumption of truth" in deciding a motion to dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The Supreme Court instructs that such conclusions, although potentially helpful in "provid[ing] the framework of a complaint," "must be supported by factual allegations." Id. Thus, the Court will limit its discussion herein to the limited factual allegations in the Amended Complaint.

### A.  The Plaintiffs

#### 1.  Martin Dekom

Plaintiff Dekom is a registered Republican residing in Manhasset, New York, which is located in Nassau County. (Am. Compl. at 1-2.)[7] He is White and a practicing Catholic. (Am.

_____

[7] The first five pages of the Amended Complaint do not contain numbered paragraphs. The Court's citations to the "Am. Compl.

Compl. ¶¶ 10-11.)  He considers himself fat or obese and suffers
from "congenitally defective ankles" which significantly impairs
his mobility.  (Am. Compl. ¶¶ 2, 6.)  He was a candidate for the
Nassau County Republican Committee in 2011 (Am. Compl. at 1),
and, when gathering signatures, a Spanish-speaking neighbor
would not sign his designating petition and "no one in the
projects would open the door."  (Am. Compl. ¶ 11.)  He did not
run in the primary election because his petition was
invalidated.  (Am. Compl. ¶ 17.)  He did not run for any
political office or party position in 2012, but he "would have
been" a candidate for the House of Representatives for the Third
Congressional District but for the "obstacles" in the New York
Election Law.  (Am. Compl. at 2.)  He "reasonably expect[ed]" to
be absent for the 2012 primary election.  (Am. Compl. ¶ 47.)  It
is unclear whether he was, in fact, absent for that election.

   2.   <u>Kenneth Jacoby</u>

       Plaintiff Jacoby is a registered Republican residing
in Oceanside, New York, which is located in Nassau County.  (Am.
Compl. at 2.)  He is a practicing Catholic and considers himself
fat or obese.  (Am. Compl. ¶¶ 6, 10.)  He is approximately sixty
percent deaf and has a "corresponding speech impediment, which
significantly impairs his ability to communicate."  (Am. Compl.

at ___" refer to page numbers, whereas the Court's citations to
"Am. Compl. ¶ ___" refer to paragraph numbers.

¶ 2.)  In 2011, he was a candidate for the Nassau County Republican Committee, but he did not run in the primary election because his petition was invalidated.  (Am. Compl. at 2 & ¶ 17.) He did not run for any political office or party position in 2012, but he "would have been" a candidate for the twentieth Assembly seat for New York State Assembly but for the "obstacles" in the New York Election Law.  (Am. Compl. at 2.) He "reasonably expect[ed]" to be absent for the 2012 primary election.  (Am. Compl. ¶ 47.)  It is unclear whether he was, in fact, absent for that election.

### 3.  Robert Pendleton

Plaintiff Pendleton is a registered Conservative residing in Merrick, New York, which is located in Nassau County.  (Am. Compl. at 2.)  He is a practicing Catholic and a senior citizen.  (Am. Compl. ¶¶ 7, 10.)  He suffers from advanced stenosis, which significantly impairs his mobility. (Am. Compl. ¶ 2.)  At some prior undisclosed time, he was a candidate for the Nassau County Conservative Committee.  (Am. Compl. at 2.)  He did not run for any political office or party position in 2012, but he "would have been" a candidate for the House of Representatives for the Fourth Congressional District but for the "obstacles" in the New York Election Law.  (Am. Compl. at 2.)  He "reasonably expect[ed]" to be absent for the

2012 primary election.  (Am. Compl. ¶ 47.)  It is unclear whether he was, in fact, absent for that election.

B.  <u>Nassau County</u>

The Amended Complaint also contains the following statistics about Nassau County:  14.6% of the County is Hispanic (Am. Compl. ¶ 1); 15.3% of the County is over the age of 65 (Am. Compl. ¶ 7); 15.5% of the County is Jewish (Am. Compl. ¶ 8); and 19.8% of Plaintiff Dekom's election district is White (Am. Compl. ¶ 11).

The Amended Complaint also asserts that 22% of the national voting age population is disabled (Am. Compl. ¶ 4) and that 68% of the national voting age population is either fat or obese (Am. Compl. ¶ 6).

III. <u>Procedural History</u>

Plaintiffs commenced this action on March 16, 2012 and simultaneously filed a motion for a preliminary injunction, seeking, among other things, an order enjoining the New York State and Nassau County Boards of Elections from enforcing the allegedly unlawful portions of the New York Election Law and implementing and mandating the enforcement of a new law prior to the commencement of the petitioning period for the federal election, which was set to begin on March 20, 2012. (Docket Entries 2-3.) Plaintiffs asserted that they were likely to suffer irreparable harm because the allegedly unlawful

provisions of the New York Election Law effectively prohibited them from running for office. The Court denied Plaintiffs' request, and, due to the time-sensitive nature of Plaintiff's Complaint, ordered expedited service of process. (Docket Entry 5.)

Plaintiffs filed an Amended Complaint on June 12, 2012, after the petitioning period for the federal election had ended and the "prospective harm ha[d] become an actual one." (Docket Entries 21, 23.) The allegations in the Amended Complaint were substantially similar to the allegations in the original Complaint. Generally, the Amended Complaint asserts that New York Election Law's designating petition requirements violate the ADA, the Rehabilitation Act, the First, Fourteenth, and Fifteenth Amendments to the U.S. Constitution pursuant to 42 U.S.C. § 1983, and the Voting Rights Act. The Amended Complaint also asserts claims under Section 1983 and the MOVE Act arising out New York Election Law's prohibition on absentee ballots for party position primary elections, and a claim under Section 1983 related to the composition of the county boards of election. Plaintiffs seek $1,000,000 each in compensatory relief and the following injunctive relief: an order (1) eliminating the signature requirement altogether and replacing it with either a single-page petition that contains the candidate's name, office

sought, residence, and signature[8] or, in the alternative, a filing fee; (2) requiring Defendants to provide such petitions in Spanish and making them available online; (3) requiring Defendants to provide absentee ballots for party primary elections; (4) requiring Defendants to prepare, print, and make available online a "running for office" handbook, not to exceed twenty pages, that contains the language "RUNNING FOR OFFICE IS NOW EASIER THAN EVER!" (Am. Compl. at 31); (5) requiring the New York State Board of Elections to "compile a list of public offices and party positions for which it receives registration and publish it on its website, along with incumbent and term" (Am. Compl. at 31); and (6) removing all state and county election commissioners and replacing them with publicly-elected commissioners.

On August 13, 2012, the State and County Defendants filed motions to dismiss. (Docket Entries 26, 27.) After extensions of time and of the applicable page limit, Plaintiffs

---

[8] The Amended Complaint describes content of the proposed petition in detail. (See Am. Compl. at 30-31.) Upon receipt of such a petition, Plaintiffs want the local board of elections to "verify the geographic eligibility of the candidate by means of the 'NYSVoter' database or the state website at voterlookup.elections.state.ny.us, and relate those findings to the candidate by the fastest means at its disposal, and post same to its website, within 24 hours." (Am. Compl. at 29.)

filed their opposition on October 1, 2012 (Docket Entry 33),[9] and the State and County Defendants filed their replies on December 3, 2012 (Docket Entries 51, 52).

In the interim, on October 9, 2012, Plaintiffs moved for the undersigned's recusal and reassignment to a three-judge panel. (Docket Entry 34.) The County Defendants opposed this request on November 8, 2012 (Docket Entry 41), and Plaintiffs submitted a reply on November 19, 2012 (Docket Entry 47). Plaintiffs also filed a request for a certificate of default and a partial default judgment on the grounds that the State and County Defendants failed to address two paragraphs on the Amended Complaint in their respective motions to dismiss. (Docket Entry 40.) This request was opposed by the State Defendants (Docket Entry 39) and was ultimately denied by the Clerk of the Court on November 8, 2012.[10] Notwithstanding the Clerk of the Court's denial of their request, Plaintiffs filed a reply brief in support of their request for default on November 19, 2012. (Docket Entry 48.) On November 28, 2012, the County

---

[9] Plaintiffs had requested permission to file a 100-page opposition brief. Although the Court granted an extension of the page limit, it limited Plaintiffs' opposition to 60 pages.

[10] The denial of the request for a certificate of default terminated the request for default judgment, because the entry of default is a prerequisite to a default judgment. See LOCAL CIVIL R. 55.2(b) (stating that a party must append the Clerk's certificate of default to its application for default judgment).

Defendants filed a sur-reply to both the recusal/three-judge panel motion and the request for default. (Docket Entry 46.)

On December 5, 2012, Plaintiffs filed a motion to "strike" the County Defendants sur-reply as untimely and unauthorized (Docket Entry 54), and on December 17, 2012, Plaintiffs filed a motion to "strike" the State and County Defendants reply briefs in support of their motions to dismiss for allegedly presenting arguments not raised in their moving papers (Docket Entry 59).

On January 4, 2013, Plaintiffs supplemented their request for recusal after the undersigned barred Plaintiff Dekom from communicating with chambers via telephone or facsimile. (Docket Entry 64.)

The motions to dismiss, the motion for recusal/reassignment to a three-judge panel, and the motions to strike are presently before the Court.

DISCUSSION

The Court will briefly address Plaintiffs' request for the entry of default and default judgment before discussing the pending motions.

I.  Default

A party is entitled to an entry of default when the party against whom judgment is sought "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Here, Plaintiffs

sought the entry of default because Defendants' motions to dismiss failed to specifically address two paragraphs of the Amended Complaint asserting claims under the Voting Rights Act. The Clerk of the Court properly denied this request because "[t]imely serving and filing a motion to dismiss under FED. R. CIV. P. 12(b), precludes entry of default." Davis v. Corr. Med. Sys., 480 F. Supp. 2d 754, 757 (D. Del. 2007). That the motions to dismiss may not have addressed every single claim purportedly raised by Plaintiffs in their Amended Complaint is irrelevant. A party may file a motion to dismiss only certain claims--i.e., a partial motion to dismiss--and the filing of any motion under Rule 12 postpones a defendant's time to answer until fourteen days after the motion is decided. FED. R. CIV. P. 12(a)(4)(A); see also Barbagallo v. Marcum LLP, 820 F. Supp. 2d 429, 443 (E.D.N.Y. 2011) (stating that "in the interest of judicial economy and avoiding piecemeal answers, 'a partial motion to dismiss will suspend the time to answer those claims or counterclaims that are not subject to the motion'" (quoting Gortat v. Capala Bros., Inc., 257 F.R.D. 353, 366 (E.D.N.Y. 2009)). Further, a party may not obtain a default judgment unless and until the Clerk of the Court has entered the default. See FED. R. CIV. P. 55(a), (b); Torres v. Exec. Officer BFI Waste Sys., No. 95-CV-1068, 1996 WL 328214, at *1 (W.D.N.Y. June 11, 1996) (denying a motion for default judgment as "premature"

because there had been no entry of default); see also supra note
10.   Accordingly, to the extent that Plaintiffs are still
seeking a default judgment, their request is DENIED.

II.  Motions to Strike

Plaintiffs have filed two motions to strike:  (1) to
strike a letter-brief submitted by the County Defendants in
opposition to Plaintiffs' requests for default and a three-judge
panel as untimely and/or as an unauthorized sur-reply and (2) to
strike both the County and State Defendants' reply briefs in
support of their motions to dismiss for raising arguments not
addressed in their moving papers.  (Docket Entries 54, 59.)
Both motions are entirely without merit.

Motions to strike are governed by Rule 12(f) of the
Federal Rules of Civil Procedure, which provides, in relevant
part, that "[t]he court may strike from a pleading an
insufficient defense or any redundant, immaterial, impertinent,
or scandalous matter." FED. R. CIV. P. 12(f).   The Federal
Rules define a "pleading" as a complaint, an answer, a
counterclaim, or a cross claim.  FED. R. CIV. P. 7(a); see also
Granger v. Gill Abstract Corp., 566 F. Supp. 2d 323, 335
(S.D.N.Y. 2008).   As Plaintiffs are not seeking to strike
pleadings, but rather briefs, Plaintiffs' motions must be
DENIED.   See Granger, 566 F. Supp. 2d at 334-35 ("Rule 12(f)
allows a court to strike pleadings only."); see also, e.g.,

16

Sierra v. United States, No. 97-CV-9329, 1998 WL 599715, at *9 (S.D.N.Y. Sept. 10, 1998) (denying a request to strike a motion to dismiss because "Rule 12(f) does not authorize this court to strike documents other than pleadings"); Burns v. Bank of Am., No. 03-CV-1685, 2007 WL 1589437, at *11 (S.D.N.Y. June 4, 2007) ("[T]he reply brief and accompanying materials of which the plaintiffs complain is not a pleading, and thus is not properly the subject of a motion under Rule 12(f)."); Latino Quimica-Amtex S.A. v. Akzo Nobal Chems. B.V., No. 03-CV-10312, 2005 WL 2207017, at *10 n.6 (S.D.N.Y. Sept. 8, 2005) (denying motion to strike an opposition brief because the motion, "[wa]s directed to a brief rather than a pleading").[11]

III. <u>Motion to Recuse / Request for a Three-Judge Panel</u>

Plaintiffs filed a single motion requesting that the undersigned recuse herself and reassign this action to a three-judge panel. The Court will address each request separately.

A.    <u>Motion to Recuse</u>

The Court will first discuss the standard applicable to motions for recusal before addressing the merits of Plaintiffs' request.

---

[11] The Court notes that it may, but is not required to, disregard (as opposed to "strike") untimely or unauthorized submissions. To the extent that they are relevant to the Court's analysis, the Court will address whether to disregard them <u>infra</u>.

1.  <u>Legal Standard</u>

The recusal of federal judges is governed by 28 U.S.C. § 455. Section 455 provides, in relevant part, that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned," or "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(a), (b)(1). The Second Circuit has held that the relevant inquiry is "whether an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal, or alternatively, whether a reasonable person, knowing all the facts, would question the judge's impartiality." <u>United States v. Yousef</u>, 327 F.3d 56, 169 (2d Cir. 2003) (alteration in original) (internal quotation marks and citation omitted); <u>see also</u> <u>United States v. Carlton</u>, 534 F.3d 97, 100 (2d Cir. 2008).

"To establish a basis for recusal, '[m]ovants must overcome a presumption of impartiality, and the burden for doing so is substantial.'" <u>Da Silva Moore v. Publicic Groupe</u>, 868 F. Supp. 2d 137, 150 (S.D.N.Y. 2012) (quoting <u>Metro. Opera Ass'n, Inc. v. Local 100, Hotel Emps. Int'l Union</u>, 332 F. Supp. 2d 667, 670 (S.D.N.Y. 2004)). "[W]here the standards governing disqualification have not been met, recusal is not optional;

rather, it is prohibited." Aguinda v. Texaco, Inc. (In re Aguinda), 241 F.3d 194, 201 (2d Cir. 2001); see also Thorpe v. Zimmer, Inc., 590 F. Supp. 2d 492, 494 (S.D.N.Y. 2008) ("The Court has an affirmative duty not to disqualify itself unnecessarily."). A court's decision not to recuse itself is reviewed by the Second Circuit for abuse of discretion. LoCascio v. United States, 473 F.3d 493, 495 (2d Cir. 2007).

2. Analysis

Plaintiffs argue that the undersigned should recuse herself because: (1) they disagree with the decisions that have been made to date--specifically, the Court's denial of Plaintiff's motion for a preliminary injunction, the imposition of an expedited timetable for service of process, and the Court's barring communications with chambers via telephone or fax; and (2) they believe that, due to the fact that the undersigned was elected to the state bench in Nassau County as a member of the Republican Party, "Judge Seybert can be expected to be particularly loyal to the machine which made her" (Pl. Recusal Mot. 4). Neither argument is of any merit.

First, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." LoCascio v. United States, 372 F. Supp. 2d 304, 315 (E.D.N.Y. 2005), aff'd, 473 F.3d 493 (2d Cir. 2007); accord Liteky v. United States, 510 U.S. 540, 555, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994); see

19

also United States v. El-Gabrowny, 844 F. Supp. 955, 959
(S.D.N.Y. 1994) ("[B]ecause it is in the nature of a judge's job
to rule, and any ruling must favor one side and disfavor the
other, rulings during the course of a case generally are not
regarded as evidence of bias, even if it is alleged that a
disproportionate number favor one side."). Rather, "opinions
formed by the judge on the basis of facts introduced or events
occurring in the course of the current proceedings, or of prior
proceedings, do not constitute a basis for a bias or partiality
motion unless they display a deep-seated favoritism or
antagonism that would make fair judgment impossible." Liteky,
510 U.S. at 555.

Here, contrary to Plaintiffs' allegations, the docket
reflects that the Court has been lenient and accommodating to
Plaintiffs on multiple occasions. For example, although the
Court did not grant Plaintiffs access to file documents via ECF,
the Court indicated that it would permit Plaintiffs to receive
electronic notifications of filings via ECF. Further,
Plaintiffs have, to date, been permitted to file numerous
frivolous motions--such as the repeated requests for the entry
of default and the motions to strike--without consequence. And
the Court granted Plaintiffs' request to submit an enlarged
brief, but limited such brief to sixty pages--more than double
the applicable page limit. An objective, disinterested observer

would not view the Court's adverse rulings as indicative of a "deep-seated . . . antagonism" towards Plaintiffs "that would make fair judgment impossible." Id. That Plaintiffs may have perceived some of these adverse rulings to be "critical or disapproving of, or even hostile to" them and their case does not warrant recusal. Id. at 555-56 ("Not establishing bias or partiality . . . are expressions of impatience, dissatisfaction, annoyance and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration--even a stern and short-tempered judge's ordinary efforts at courtroom administration--remain immune.").

Second, the undersigned's familiarity with New York Election Law and the Nassau County Republican Party due to personal experiences running for office in Nassau County over twenty-five years ago does not warrant recusal. "[I]t is rare that recusal is granted based only on a question of impartiality because of the judge's former affiliation." See Local 338, RWDSU v. Trade Fair Supermarkets, 455 F. Supp. 2d 143, 144 (E.D.N.Y. 2006). As the Court of Appeals has explained:

> [A] judge is not impartial solely because an attorney is embroiled in a controversy with the administration that appointed the judge. Judges generally have political backgrounds to one degree or another but must be

> presumed, absent more, to be impartial. At
> least in the federal system, judges separate
> themselves from politics when going on the
> bench, and their life tenure reduces any
> felt reliance on political patrons.

MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc., 138 F.3d 33, 38 (2d Cir. 1998); see also United States v. Corbin, No. 09-CR-0354, 2009 WL 2611315, at *3 (E.D.N.Y. Aug. 25, 2009).[12] Further, notwithstanding Plaintiffs' speculation to the contrary, the Court has no "longstanding personal relationships" with any of the defendants in this action. (See Pls. Recusal Mot. 4.) As such, recusal under these circumstances would be improper. See In re Drexel Burnham Lambert Inc., 861 F.2d 1307, 1313 (2d Cir. 1988) ("[W]here an interest is not direct, but is remote, contingent, or speculative, it is not the kind of interest which reasonably brings into question a judge's impartiality.").

Accordingly, Plaintiffs' request that the Court recuse itself is DENIED.

---

[12] The case cited by Plaintiffs, In re Aguinda, 241 F.3d 194, 206 (2d Cir. 2001), in which the Circuit found that recusal was not required, is inapposite. That case involved a judge who attended an expense-paid seminar sponsored by a non-profit organization that had received some funding from a party to an action pending before that judge. Although the Circuit noted, in dicta, that recusal may be required if the non-profit had received a substantial portion of its funding from a litigant, the Court fails to see how this is relevant to the present circumstances.

B. <u>Request for a Three-Judge Panel</u>

Plaintiffs also ask that this action be referred to a three-judge panel pursuant to 42 U.S.C. § 1973aa-2. Section 1973aa-2 provides that any "action under this subsection shall be heard and determined by a court of three judges." However, Section 1973aa-2, by its express terms, only permits suits by the Attorney General. <u>Id.</u> (stating, in relevant part, that "[w]henever the Attorney General has reason to believe" that Sections 1973aa, 1973aa-1, or 1973aa-1a are being violated, "he may institute for the United States, or in the name of the United States, an action in a district court of the United States"). Thus this provision is inapplicable to the present case.

Although a three-judge panel is required for suits brought by private citizens under 42 U.S.C. § 1973c, this section relates to private actions seeking to enjoin the implementation of a change in a voting standard, practice, or procedure that was not precleared by the U.S. District Court for the District of Columbia or the Attorney General. <u>See</u> <u>Arizona v. Holder</u>, 839 F. Supp. 2d 36, 38 (D.D.C. 2012) (listing the "types of voting rights suits [that] are heard by three-judge courts"). As this is not what Plaintiffs allege in the present case, this section is also inapplicable. <u>See</u> 10B FED. PROC., L. Ed. § 28:117 ("Other than in private suits brought under the

preclearance requirements provision, a three-judge court is not required in private suits to enforce voting rights . . . ."); cf. Allen v. State Bd. of Elections, 393 U.S. 544, 561, 89 S. Ct. 817, 22 L. Ed. 2d 1 (1969) (stating that statutes providing for adjudication by a three-judge panel "must be strictly construed").

Accordingly, Plaintiffs' request is DENIED.

IV. Motions to Dismiss

Both the State and County Defendants have moved to dismiss Plaintiffs' Amended Complaint in its entirety for lack of subject matter jurisdiction and for failure to state a claim. The Court will discuss their arguments pertaining to subject matter jurisdiction first.

A.  Lack of Subject Matter Jurisdiction

Defendants raise two arguments in support of dismissing for lack of subject matter jurisdiction. The State and County Defendants argue that Plaintiffs lack standing to bring the claims asserted herein because they did not attempt to submit designating petitions for the 2012 election. The State Defendants also argue that they are entitled to sovereign immunity under the Eleventh Amendment. The Court will first discuss the applicable standard of review before addressing the merits of each argument.

1.  <u>Standard of Review under Rule 12(b)(1)</u>

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000); <u>see also</u> <u>Morrison v. Nat'l Austl. Bank Ltd.</u>, 547 F.3d 167, 170 (2d Cir. 2008), <u>aff'd</u>, --- U.S. ----, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010).  In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions.  <u>See</u> <u>Makarova</u>, 201 F.3d at 113.  The Court must accept as true the factual allegations contained in the complaint, but it will not draw argumentative inferences in favor of the plaintiff because subject matter jurisdiction must be shown affirmatively.  <u>See</u> <u>Morrison</u>, 547 F.3d at 170; <u>Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.</u>, 968 F.2d 196, 198 (2d Cir. 1992).  The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. <u>Morrison</u>, 547 F.3d at 170.

2.  <u>Standing</u>

Under Article III of the United States Constitution, federal courts are confined "to adjudicating actual 'cases' and 'controversies.'"  <u>Allen v. Wright</u>, 468 U.S. 737, 750, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984); <u>see also</u> U.S. Const., art. III,

§ 2. "This limitation is effectuated through the requirement of standing." Cooper v. U.S. Postal Serv., 577 F.3d 479, 489 (2d Cir. 2009) (citing Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 471-72, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982)); see also United States v. Grundhoefer, 916 F.2d 788, 791 (2d Cir. 1990). There are three requirements to establish Article III standing: "(1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." Cooper, 577 F.3d at 489; see also Allen, 468 U.S. at 751 ("A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). The County Defendants argue that Plaintiffs lack standing because they did not attempt to run for political office or a party position in the 2012 primary election. There are two issues with the County Defendants' argument.

First, although Plaintiffs did not seek to run for political office or a party position in 2012, Plaintiffs Dekom and Jacoby circulated petitions for party positions in 2011 (and Plaintiff Pendleton in some other year) and had their petitions

invalidated, in part, because they failed to obtain the requisite number of signatures from registered voters in the applicable political subdivision.[13] Further, that the 2011 and 2012 primary elections are over does not moot Plaintiffs Dekom and Jacoby's claims in their entirety because they are seeking both monetary and injunctive relief. See Van Wie v. Pataki, 267 F.3d 109, 115 n.4 (2d Cir. 2001).[14]

---

[13] Mr. Dekom was unable to obtain the requisite number of signatures, and Mr. Jacoby obtained signatures from voters in the wrong assembly district. See Dekom v. Nassau Cnty., No. 12-CV-3473 (E.D.N.Y.) (exhibits attached to Complaint at Docket Entry 1).

[14] The Court questions, without deciding, whether Plaintiffs' claims for injunctive relief are moot. An exception to the mootness doctrine exists where a claim is "capable of repetition, yet evading review." See Lerman, 232 F.3d at 141 (quoting Meyer v. Grant, 486 U.S. 414, 417-18 n.2, 108 S. Ct. 1886, 100 L. Ed. 2d 425 (1988)); accord Fulani v. League of Women Voters Educ. Fund, 882 F.2d 621, 628 (2d Cir. 1989). Here, Plaintiffs' claims arising out of the 2012 primary election have evaded review, as "the challenged action was too short to be fully litigated prior to its expiration." Lerman, 232 F.3d at 141. It is less clear, however, whether the claim is capable of repetition--i.e., whether "the same complaining party ha[s] a reasonable expectation that [he] will face the same action again." Van Wie, 267 F.3d at 114. Here, the Amended Complaint alleges that Plaintiffs "would" run again. (Am. Compl. at 2.) Whether this assertion establishes a "reasonable expectation" that they will again be subjected to the same dispute is questionable. See Van Wie, 267 F.3d at 115 (finding claims for injunctive relief moot where, in the absence of a class action, there was only a "mere theoretical possibility" that the controversy was capable of repetition).

The Court, however, need not decide this issue because, even if the claims for injunctive relief are not moot, Plaintiffs have failed to state a claim. See infra pages 32-55.

Second, several courts have held that potential candidates need-not have complied with election law provisions in order to have standing to challenge the constitutionality of those laws. See, e.g., Bergland v. Harris, 767 F.2d 1551, 1555-56 (11th Cir. 1985) (that potential candidates only made "token attempts" at meeting the election law's signature requirement did not deprive them of standing); Stevenson v. State Bd. of Elections, 638 F. Supp. 547, 549 (N.D. Ill. 1986) (holding that plaintiffs did not lack standing to challenge the constitutionality of the election law because they never submitted petitions and had them rejected, finding that "this gesture of formality is unnecessary"); cf. McLain v. Meier, 851 F.2d 1045, 1048 (8th Cir. 1988) (finding that voters--as distinguished from potential candidates--had standing to challenge laws restricting candidates' access to the ballot). But see Van Allen v. Pataki, 9 F. App'x 41, 42 (2d Cir. 2001) (finding that plaintiffs lacked standing to challenge constitutionality of election law because they did not allege that they had circulated or intended to submit a nominating petition for any elected office).

Accordingly, to the extent Defendants seek to dismiss for lack of standing, their motions are DENIED.

3. <u>Sovereign Immunity</u>

The State Defendants also argue that the claims against the State, the State Board of Elections, and the individual State Defendants in their official capacities are barred by the Eleventh Amendment. "The Eleventh Amendment to the Constitution bars suits against a state in federal court unless that state has consented to the litigation or Congress has permissibly enacted legislation specifically overriding the state's immunity." <u>Russell v. Dunston</u>, 896 F.2d 664, 667 (2d Cir. 1990) (citations omitted); <u>see</u> <u>also</u> <u>Bd. of Trustees of Univ. of Ala. v. Garrett</u>, 531 U.S. 356, 363, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001). This bar also applies to claims against State agencies and State officials in their official capacities and, with limited exception, it bars both monetary and equitable relief.[15] <u>See</u> <u>Edelman v. Jordan</u>, 415 U.S. 651, 667–69, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974); <u>Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.</u>, 506 U.S. 139, 144, 113 S. Ct. 684, 121 L. Ed. 2d 605 (1993). Thus, Plaintiffs' claims under Section 1983 against the State, the State Board of Elections,

---

[15] Under <u>Ex Parte Young</u>, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), a party may seek injunctive relief in federal court against a state official for a violation of federal law. <u>See</u> <u>Mary Jo C. v. N.Y. State & Local Ret. Sys.</u>, 707 F.3d 144, 166 (2d Cir. 2013). Thus to the extent that Plaintiffs are seeking injunctive relief against the individual State Defendants in their official capacities, those claims are not barred by sovereign immunity.

and the State Board of Election Commissioners in their official capacities are barred by the Eleventh Amendment. See Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004); see also, e.g., Iwachiw v. N.Y.C. Bd. of Elections, 217 F. Supp. 2d 374, 379 (E.D.N.Y. 2002) (dismissing claims brought pursuant to Section 1983 against the State Board of Elections as barred by sovereign immunity), aff'd, 126 F. App'x 27 (2d Cir. 2005); McMillan v. N.Y. State Bd. of Elections, No. 10-CV-2502, 2010 WL 4065434, at *3 (E.D.N.Y. Oct. 15, 2010) (same), aff'd, 449 F. App'x 79 (2d Cir. 2011); cf. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989) (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983"). But see supra note 15. However, Congress has abrogated the States' sovereign immunity on claims arising under the Voting Rights Act, see, e.g., Mixon v. State of Ohio, 193 F.3d 389, 398-99 (6th Cir. 1999), New York has waived sovereign immunity for damages suits brought under the Rehabilitation Act, see Alexander v. State Univ. of N.Y. at Buffalo, --- F. Supp. 2d ----, 2013 WL 750133, at *5 (W.D.N.Y. 2013) (citing Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 114-15 (2d Cir. 2001)), and whether sovereign immunity bars Plaintiffs' claims under the ADA is unclear, see Bolmer v. Oliveira, 594 F.3d 134, 146-49 (2d Cir. 2010). None of these issues were raised by the State Defendants--let alone

adequately briefed--and, accordingly, the Court will not dismiss those claims against the State Defendants as barred by the Eleventh Amendment at this time.

B.    Failure to State a Claim

Defendants also move to dismiss the claims in the Amended Complaint for failure to state a claim.    Plaintiffs' claims fall into three categories:    (1) discrimination claims under the ADA and the Rehabilitation Act, (2) constitutional claims under 42 U.S.C. § 1983, and (3) claims under the Voting Rights Act.    The Court will summarize the applicable standard of review before addressing each category of claims separately.

1.    Standard of Review under Rule 12(b)(6)

In deciding Rule 12(b)(6) motions to dismiss for failure to state a claim, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); accord Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009).    First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."    Iqbal, 556 U.S. at 678 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); accord Harris, 572 F.3d at 72.    Second, only complaints

31

that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. <u>Iqbal</u>, 556 U.S. at 679 (citing <u>Twombly</u>, 550 U.S. at 556). Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u> (citation omitted); <u>accord</u> <u>Harris</u>, 572 F.3d at 72.

While <u>pro</u> <u>se</u> plaintiffs enjoy a somewhat more liberal pleading standard, <u>see</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) ("[A] <u>pro</u> <u>se</u> complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (internal quotation marks and citation omitted)), they must still comport with the procedural and substantive rules of law, <u>see</u> <u>Colo. Capital v. Owens</u>, 227 F.R.D. 181, 186 (E.D.N.Y. 2005).

### 2. ADA and Rehabilitation Act Claims

Plaintiffs argue that the signature requirements of Section 6-136 of New York's Election Law violate Title II of the ADA and the Rehabilitation Act because such requirements favor candidates who are not disabled and can complete the "physically demanding" task of "going door-to-door" to obtain the requisite number of signatures. (Am. Compl. ¶¶ 2-3.) To establish a violation of either Title II of the ADA or the Rehabilitation Act, Plaintiffs must show that: "(1) they are 'qualified individuals' with a disability; (2) that the defendants are

subject to the ADA [and/or the Rehabilitation Act]; and (3) that plaintiffs were denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of plaintiffs' disabilities." Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003); see also Rodriguez v. City of N.Y., 197 F.3d 611, 618 (2d Cir. 1999) (stating that the ADA and the Rehabilitation Act "impose identical requirements").

Here, Defendants appear to concede that they are subject to the ADA and the Rehabilitation Act and that Plaintiffs are "qualified individuals" with disabilities. Thus, the issue is whether Plaintiffs have adequately pled that they were discriminated against or excluded from participating in the petitioning process on account of their disabilities. Defendants assert that they have not. The Court agrees.

Plaintiffs are in no way excluded from obtaining signatures and submitting designating petitions. Although Plaintiffs' disabilities may make it more difficult for them to individually canvas neighborhoods to obtain signatures, Section 6-136 does not require candidates to personally collect signatures. In fact, it is expected that volunteers will assist candidates in obtaining signatures. See Am. Party of Tex. v. White, 415 U.S. 767, 787, 94 S. Ct. 1296, 39 L. Ed. 2d 744 (1974) ("Hard work and sacrifice by dedicated volunteers is the

lifeblood of any political organization."); <u>see</u> <u>also</u> <u>LaRouche v.</u>
<u>Kezer</u>, 990 F.2d 36, 41 (2d Cir. 1993) (stating that the "very
purpose" of the petitioning process is to "separate candidates
on the basis of their support," which includes the support of
volunteers needed to gather the requisite number of signatures).
Accordingly, the Court finds that Plaintiffs have failed to
plead that they were denied the opportunity to participate in
the 2011 or 2012 primary elections on account of their
disabilities, and their ADA and Rehabilitation Act claims are
hereby DISMISSED.

### 3.  <u>Claims Pursuant to 42 U.S.C. § 1983</u>

Before addressing the merits of Plaintiffs' claims
under Section 1983, there is one preliminary issue that was
raised by the State Defendants. (<u>See</u> State Defs. Mot. 6 n.4.)
Plaintiffs name eight individuals as Defendants:  Governor
Cuomo, Attorney General Eric Schneiderman, New York State Board
of Election Commissioners Walsh, Aquila, Kellner, and Peterson,
and Nassau County Board of Election Commissioners Savinetti and
Biamonte.  However, none of these individual Defendants are
mentioned in the body of the Amended Complaint.  "'It is well
settled in this Circuit that personal involvement of defendants
in alleged constitutional deprivations is a prerequisite to an
award of damages under § 1983.'"  <u>Colon v. Coughlin</u>, 58 F.3d
865, 873 (2d Cir. 1995) (quoting <u>Wright v. Smith</u>, 21 F.3d 496,

501 (2d Cir. 1994)).  Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Iqbal, 556 U.S. at 676.  As the Amended Complaint fails to do that, the Section 1983 claims for monetary relief against the individual Defendants are hereby DISMISSED.

The only remaining Section 1983 claims are those for injunctive relief against the individual State and County Boards of Elections' Commissioners and for both monetary and injunctive relief against the Nassau County Board of Elections.  Those claims broadly fall into two categories:  claims asserting violations of the Equal Protection Clause and claims asserting violations of Plaintiffs' right to vote as protected by the First and Fourteenth Amendments.[16]  The Court will address each separately.

a.  Equal Protection

Plaintiffs claim that the designating petition process as outlined in the New York Election Law violates the Equal

_____

[16] Plaintiffs also appear to assert a claim under the MOVE Act (Am. Compl. ¶¶ 48-49)--namely, that Section 10-108(1)(a) of New York's Election Law, which prohibits absentee ballots for military personnel seeking to vote in primary elections for party positions, violates 42 U.S.C. § 1973ff-1, which requires the State to "permit absent uniformed services voters and overseas voters to . . . vote by absentee ballot in general, special, primary, and runoff elections for Federal office." However, party positions are not Federal.  Cf. N.Y. ELEC. LAW § 1-104(4).  Therefore, the MOVE Act is inapplicable here, and this claim is hereby DISMISSED.

Protection Clause of the Constitution because the process favors: (1) nondisabled candidates, who can more easily do the "physically demanding" task of "going door-to-door" to obtain the requisite number of signatures (Am. Compl. ¶¶ 2, 6); (2) non-religious candidates and voters, who will be unavailable during a portion of the petitioning period, which for the 2012 primaries included both Passover and Holy Week (Am. Comp. ¶¶ 8-10); (3) Hispanic candidates, as Plaintiff Dekom lives in a largely Hispanic neighborhood (Am. Compl. ¶ 11); (4) candidates with less registered voters in their party in their political subdivision, because those candidates are required to obtain less signatures than candidates with more registered voters in their party in their political subdivision (Am. Compl. ¶ 28); (5) Democrats, as New York is "heavily Democratic" (Am. Compl. ¶ 30); and (6) candidates running for "higher office," because "the lesser the position, the greater the actual percent signature burden" (Am. Compl. ¶ 31 (emphasis in original); see also Am. Compl. ¶ 32).[17] These claims are entirely without merit and must be dismissed.

_____

[17] Plaintiffs seem to think that each individual paragraph constitutes a separate "claim" entitling them to relief. (See Request for Default, Docket Entry 40 (seeking the entry of default on certain paragraphs of the Amended Complaint that Defendants failed to address in their motions to dismiss).) This, however, is not the purpose of the paragraph structure of pleadings in federal court. Further, given the long, often multi-sentence paragraphs in the Amended Complaint, the lack of

There are several ways in which a statute can violate the Equal Protection Clause:  if it expressly classifies persons on the basis of race, gender, national origin, or some other suspect classification, see Hayden v. Cnty. of Nassau, 180 F.3d 42, 48 (2d Cir. 1999); Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 213, 227-29, 115 S. Ct. 2097, 132 L. Ed. 2d 158 (1995), if it is facially neutral but is applied in a discriminatory fashion, see Hayden, 180 F.3d at 48; Yick Wo v. Hopkins, 118 U.S. 356, 373-74, 6 S. Ct. 1064, 30 L. Ed. 220 (1886), or if it is facially neutral but is motivated by discriminatory animus and it adversely affects a suspect class, see Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 264-65, 97 S. Ct. 555, 563, 50 L. Ed. 2d 450 (1977); Johnson v. Wing, 178 F.3d 611, 615 (2d Cir. 1999).  Plaintiffs here have failed to state a claim because the provisions of New York's Election Law at issue are facially neutral and the Amended Complaint does not allege that they were enacted with discriminatory intent or applied in a discriminatory fashion. See, e.g., Hewes v. Abrams, 718 F. Supp. 163, 167 (S.D.N.Y. 1989) (collecting cases that "have recognized that varying the

a list of distinct causes of action, and the fact that many of the allegations in different paragraphs significantly overlap with one another, it is very difficult for the Court to articulate Plaintiffs' purported claims for relief.  Thus, this list is meant to be a summary of Plaintiffs' purported claims-- not necessarily an exhaustive list.

size of the signature requirements based on the size of the relevant voter base is rational and thus perfectly consistent with the equal protection clause"). That the petitioning process may, for non-discriminatory reasons, make it more difficult for Plaintiffs to get on the ballot than other candidates does not violate equal protection as there is no "constitutional right to have a 'fair shot' at winning the party's nomination." <u>N.Y. State Bd. of Elections v. López Torres</u>, 552 U.S. 196, 205, 128 S. Ct. 791, 169 L. Ed. 2d 665 (2008).[18] Accordingly, Defendants' motions to dismiss these claims are GRANTED, and these claims are hereby DISMISSED.

---

[18] To the extent that Plaintiffs attempt to plead a selective enforcement claim under the Equal Protection Clause, their claim also fails. To plead a claim for selective enforcement, a plaintiff must allege that: (1) he was "treated differently from other similarly situated individuals," and (2) "such differential treatment was based on 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" <u>Harlen Assocs. v. Inc. Vill. of Mineola</u>, 273 F.3d 494, 499 (2d Cir. 2001) (quoting <u>LaTrieste Rest. & Cabaret v. Vill. of Port Chester</u>, 40 F.3d 587, 590 (2d Cir. 1994)); <u>accord</u> <u>Cobb v. Ponzi</u>, 363 F.3d 89, 110 (2d Cir. 2004). Further, as with any claim under Section 1983, the challenged conduct must be attributable to a person acting under color of state law. <u>See</u> <u>Snider v. Dylag</u>, 188 F.3d 51, 53 (2d Cir. 1999). Here, Plaintiffs argue that the process by which voters object to designating petitions is "subjective" because voters disproportionately object to insurgents' petitions. Plaintiffs, however, do not allege that the County Board of Elections' treatment of objections is subjective or inconsistent--only that, as insurgents, Plaintiffs' petitions are more likely to be objected to and consequently invalidated. Thus, the alleged "differential treatment" and subjectivity is

b.   <u>Right to Vote</u>

Plaintiffs' appear to assert four distinct claims related to their fundamental rights as protected by the First and Fourteenth Amendments: (1) the designating petition process as outlined in New York's Election Law unduly burdens Plaintiffs' right to vote, (2) the bipartisan structure of the County Board of Elections violates Plaintiffs' freedom of association, (3) the signature requirement violates Plaintiffs' right to "anonymous political speech" (Am. Compl. ¶ 13), and (4) New York Election Law's prohibition of absentee ballots for party position primaries infringes Plaintiffs' right to vote. The Court will address each separately.

i.   <u>Ballot-Access Restrictions</u>

Ballot-access restrictions, like those at issue here, affect "two different, although overlapping, kinds of rights-- the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." <u>Anderson v. Celebrezze</u>, 460 U.S. 780, 787, 103 S. Ct. 1564, 75 L. Ed. 2d 547 (1983) (internal quotation marks and citation omitted); <u>see</u> <u>also</u> <u>López Torres</u>, 552 U.S. at 204 ("We have indeed acknowledged an individual's associational right to vote

caused by the voters who file objections, not by Defendants or some other state actor.

in a party primary without undue state-imposed impediment."). To determine whether the burden imposed by a particular ballot-access law rises to the level of a constitutional violation, the Court must "weigh the 'character and magnitude' of a plaintiff's injury against the state's interests supporting the regulation." Maslow v. N.Y.C. Bd. of Elections, 658 F.3d 291, 296 (2d Cir. 2011) (quoting Burdick v. Takushi, 504 U.S. 428, 433, 112 S. Ct. 2059, 119 L. Ed. 2d 245 (1992)). The Second Circuit has described the applicable test as follows:

> When state election laws subject speech, association, or the right to vote to "'severe' restrictions, the regulation must be 'narrowly drawn to advance a state interest of compelling importance.'" By contrast, when a state election law "imposes only reasonable, nondiscriminatory restrictions" upon First and Fourteenth Amendment rights, then "the State's important regulatory interests are generally sufficient to justify the restrictions."

Lerman, 232 F.3d at 145 (quoting Burdick, 504 U.S. at 434); see also Prestia v. O'Connor, 178 F.3d 86, 88 (2d Cir. 1999).

Plaintiffs here argue that the designating petition process--specifically, the requirement that candidates obtain a certain number of signatures within 38 days to appear on the ballot for the primary election (or 25% less signatures in 28 days for the 2012 primary election), N.Y. ELEC. LAW § 6-136--is unduly burdensome because: (1) it requires "going door-to-door" which can be "physically demanding" (Am. Compl. ¶ 2), as opposed

40

to allowing voters to sign petitions via affidavit, email, telephone, or fax (Am. Compl. ¶ 37); (2) the petitioning period takes place in the spring when there is limited daylight and inclement weather and includes both Passover and Holy Week (Am. Compl. ¶¶ 8, 24); (3) a candidate can be accused of forgery if a voter's signature on a designating petition does not match the signature on the voter's buff card (Am. Compl. ¶ 25); (4) candidates can collect more signatures than is needed but voters are limited to signing one designating petition per position, which limits the pool of voters available to sign Plaintiffs' petitions (Am. Compl. ¶¶ 26, 33); (5) the list of eligible voters often includes the names of people who have died or moved within the past year, which affects the number of signatures that candidates will be required to obtain (Am. Compl. ¶¶ 34-35); (6) certain election districts contain gated communities, nursing homes, and apartment buildings that are inaccessible to the public, so those residents will be unable to sign designating petitions (Am. Compl. ¶ 36); and (7) people are unwilling to open their doors to strangers or to affix their name and signature on a public document due to increased crime rates (Am. Compl. ¶¶ 38-41).[19]  The Court disagrees.

---

[19] Plaintiffs also argue that the rules governing the content of designating petitions--i.e., the possible objections to petitions--are too complicated and take particular issue with what they call the "town/city trap."  This refers to the

"States have an important interest in 'requiring some preliminary showing of a significant modicum of support' before printing a candidate's name on the ballot, so as to 'avoid[] confusion, deception, and even frustration of the democratic process at the general election.'" <u>Prestia</u>, 178 F.3d at 88 (alteration in original) (quoting <u>Jenness v. Fortson</u>, 403 U.S. 431, 442, 91 S. Ct. 1970, 29 L. Ed. 2d 554 (1971)). And the Second Circuit has repeatedly upheld Section 6-136's signature requirements as constitutional, finding that "a requirement that ballot access petitions be signed by at least 5% of the relevant

requirement under Section 6-132(1) of New York's Election Law that signers list their city or town of residence in addition to their street address. According to Eastern District Judge Edward R. Korman, this becomes a "trap" because voters "often believe that the village that they use as their mailing address is the 'town' or 'city' called for by the Election Law, when in fact the statute requires them to list the larger town/city unit within which their village of residence is located." <u>Molinari v. Powers</u>, 82 F. Supp. 2d 57, 63 (E.D.N.Y. 2000). In <u>Molinari</u> signatures were being invalidated because the signer designated his village of residence instead of his town. Judge Korman held that this practice was unconstitutional because it was not rationally related to a legitimate government interest. <u>Id.</u> at 72-73. This, however, does not invalidate Section 6-132, nor does it invalidate the designating petition process as a whole. Further, Plaintiffs do not allege that their own petitions were invalidated due to this "trap," or that their signatures on petitions in support of other candidates were invalidated due to this "trap."

To the extent that Plaintiffs oppose the objection process more generally, "[l]imiting the choice of candidates to those who have complied with state election law requirements is the prototypical example of a regulation that, while it affects the right to vote, is eminently reasonable." <u>Burdick</u>, 504 U.S. at 440 n.10; <u>see</u> also <u>Rivera-Powell v. N.Y.C. Bd. of Elections</u>, 470 F.3d 458, 469 (2d Cir. 2006).

voter pool is generally valid, despite any burden on voter choice that results when such a petition is unable to meet the requirement." Id. (collecting cases); see also Hewes v. Abrams, 884 F.2d 74, 75 (2d Cir. 1989); McMillan v. N.Y. Bd. of Elections, 234 F.3d 1262, 2000 WL 1728050, at *1 (2d Cir. Nov. 17, 2000); cf. Rivera-Powell, 470 F.3d at 469 n.15 ("Many restrictions, such as signature requirements, not only do not burden voters' constitutional rights to associate, but are, as a practical matter, necessary to ensure the orderly functioning of elections."). Although, as Plaintiffs suggest, going door-to-door to collect signatures may seem archaic in light of the technological advancements of the last decade, there is a "distinction between constitutionality and wise policy." López Torres, 552 U.S. at 209 (Stevens, J., concurring) (quoting Thurgood Marshall as saying that "[t]he Constitution does not prohibit legislatures from enacting stupid laws"). To the extent that Plaintiffs are unhappy with the current ballot-access laws, the proper recourse is with the legislature--not the courts. Cf. Powell v. Power, 436 F.2d 84, 86 (2d Cir. 1970) (warning against federal courts "be[ing] thrust into the details of virtually every election, tinkering with the state's election machinery, reviewing petitions, registration cards, vote tallies, and certificates of election for all manner of error and insufficiency under state and federal law"). Accordingly,

Plaintiffs' claims arising out of the signature requirement are hereby DISMISSED.

### ii. Bipartisan Board of Elections

The Amended Complaint also asserts that the bipartisan structure of the County Board of Elections violates Democrats and Republicans' freedom of association because the Democratic Commissioner is involved in adjudicating objections to Republican designating petitions and, thus, has a say in which candidates get to run in the Republican primary election (and vice versa). The Court disagrees. Although the Supreme Court has held that "[a] political party has a First Amendment right to limit its membership as it wishes, and to choose a candidate-selection process that will in its view produce the nominee who best represents its political platform," López Torres, 552 U.S. at 202, a party's freedom of association is not absolute, see id. at 203. As the Court explained above, the burden that the bipartisan County Board of Elections places on the parties' freedom of association must be weighed against the government's interest in imposing such a burden. See supra pages 39-40. The Court finds Eastern District Judge Arthur D. Spatt's decision in Queens County Republican Committee ex rel. Maltese v. New York State Board of Elections, 222 F. Supp. 2d 341 (E.D.N.Y. 2002), to be directly on point. In Maltese, Judge Spatt held that Section 6-154 of New York's Election Law--which allows voters

44

from any party to file objections to designating petitions--did not violate the parties' freedom of association. Id. at 349. Judge Spatt explained as follows:

> First, the law[] appl[ies] equally to all parties, both major and minor. Second, the law[] do[es] not allow a non-party member to alter or influence the views of another political party. Third, the law[] do[es] not force a party to associate with other parties. Fourth, the law[] do[es] not allow non-party members to determine the nominees of another party. In sum, the law[] allow[s] a non-party member to ensure a candidate has validly, properly and legally complied with the signature ballot access requirement for the primary election. The challenged candidate has either met the lawful requirements or she has not.

Id. at 349. The Court finds that the same analysis and rationale apply here: the State's interest in ensuring that all nominees have fully complied with the ballot-access requirements outweighs the minimal burden placed on the parties' associational rights. See Burdick, 504 U.S. at 440 n.10 ("Limiting the choice of candidates to those who have complied with state election law requirements is the prototypical example of a regulation that, while it affects the right to vote, is eminently reasonable."). Accordingly, Plaintiffs' claims arising out of the bipartisan structure of the County Board of Elections are DISMISSED.

### iii. <u>Public Access to Designating Petitions</u>

Plaintiffs also argue that the signature requirements violates the signers' right to a secret ballot. However, "[t]he United States Supreme Court has never recognized secrecy in voting as a constitutionally guaranteed right, despite the practice's prevalence in our nation's electoral system." <u>Thompson v. Dorchester Cnty. Sheriff's Dep't</u>, No. 06-CV-0968, 2007 WL 5681972, at *8 (D.S.C. May 4, 2007), <u>aff'd</u>, 280 F. App'x 328 (4th Cir. June 9, 2008). Accordingly, this claim is without merit and must be DISMISSED.

### iv. <u>Absentee Ballots for Party Position Primaries</u>

Finally, Plaintiffs argue that Section 8-400(9) of New York's Election Law, which prohibits absentee voting in primary elections for party positions on ward, town, city, or county committees, is unconstitutional on its face as it violates Plaintiffs' right to vote. However, "[t]here is no constitutional right to an absentee ballot." <u>Obama for Am. v. Husted</u>, 697 F.3d 423, 439 (6th Cir. 2012) (citing <u>McDonald v. Bd. of Election Comm'rs</u>, 394 U.S. 802, 89 S. Ct. 1404, 22 L. Ed. 2d 739 (1969)); <u>see also</u> <u>Price v. N.Y. State Bd. of Elections</u>, 540 F.3d 101, 112 (2d Cir. 2008). Rather, the burden that the lack of an absentee ballot imposes on the right to vote must be

weighed against the government's justification for the restriction.  See Price, 540 F.3d at 109.

Here, the burden on Plaintiffs' right to vote is minimal, at best, as the Amended Complaint merely alleges that they "reasonably expect to be absent" on election day without explaining why. (Am. Compl. ¶ 47.)  The County Defendants argue that this burden is outweighed by what it would cost the County to provide absentee ballots for party position primaries.  The Court agrees.  There are 1,175 election districts in Nassau County and six political parties (Republican, Democratic, Conservative, Independence, Working Families, and the Green Party); thus, the County would have to provide 7,050 different absentee ballots for the primary election.  Such an extraordinary administrative expense far outweighs the minimal burden that the lack of absentee ballots places on Plaintiffs' right to vote.  See Price, 540 F.3d at 110 (opining, albeit in dicta, that "the administrative expenses associated with absentee balloting" might constitute a "plausible reason[] why a state might choose not to provide absentee ballots in an election").[20]  Accordingly, Plaintiffs' claims arising out of the

---

[20] Although the Second Circuit in Price upheld an as-applied challenge to the Election Law's prohibition on absentee ballots in party primary elections, the Circuit qualified its holding:

> The fact pattern here is unusual, and our holding in this case is necessarily narrow.

Election Law's prohibition on absentee ballots for party position primaries are hereby DISMISSED.

### 4. Claims under the Voting Rights Act

Plaintiffs purport to assert three claims under the Voting Rights Act: (1) that Defendants violated Sections 1973b(f)(4) and 1973aa-1a(c) by failing to provide copies of the designating petition in Spanish (Am. Compl. ¶ 1); (2) that

---

> We do not hold that there is a general constitutional right to obtain absentee ballots. Nor do we hold that there is a constitutional right to obtain absentee ballots in all county committee races in New York State. Instead, after applying a deferential standard of review, and after examining the record in this as-applied challenge, we conclude that the arguments proffered by the State are so extraordinarily weak that they cannot justify the burdens imposed by [the Election Law's prohibition on absentee ballots in party position primaries].

540 F.3d at 112. The facts of _Price_ are easily distinguishable from the case at hand. The State in _Price_ put forward "no substantive justifications for the restrictions imposed" and instead made a "contrived argument that tabulating absentee ballots could cause a delay in finalizing election results, which could interfere with the [Albany County Republican Committee's] ability to nominate a candidate in situations where quick action was required." _Id._ at 110. However, the Albany County Republican Committee was a party in _Price_, and the Circuit found that "a state does not have a compelling interest in sav[ing] a political party from pursuing self-destructive acts because the state cannot substitut[e] its judgment for that of the party." _Id._ (internal quotation marks and citation omitted). In the present case, on the other hand, the Nassau County Republican Committee is _not_ a party, and the County has put forward a valid reason for the restriction. Accordingly, the Court finds that the narrow holding in _Price_ is inapplicable to the present case.

48

Sections 6-134 and 6-154 of New York's Election Law--_i.e._, the sections regarding the rules governing designating petitions and objections to designating petitions--violate 42 U.S.C. § 1971(a)(2)(A)-(B) because such provisions are selectively enforced, vague, and overly broad (Am. Compl. ¶ 21); and (3) that the overall petitioning process is so burdensome that it constitutes a "test or device," which is prohibited under Section 1973aa of the Voting Rights Act (Am. Compl. ¶¶ 12, 18). The Court will address each claim separately.

a.   <u>Lack of Bilingual Petitions</u>

Section 1973b(f)(4) of the Voting Rights Act provides, in relevant part, as follows:

> Whenever any State or political subdivision subject to the prohibitions of the second sentence of subsection (a) of this section <u>provides</u> any registration or voting notices, forms, instructions, assistance, or other materials or information relating to the electoral process, including ballots, it shall provide them in the language of the applicable language minority group as well as in the English language . . . .

42 U.S.C. § 1973b(f)(4) (emphasis added); <u>accord</u> <u>id.</u> § 1973aa-1a(c).   Defendants argue, <u>inter</u> <u>alia</u>, that this section is inapplicable to the designating petitions because the petitions are not "provided" by the State or Nassau County Boards of Elections, but rather are prepared and provided by the individual candidates.   The Court agrees.   Unlike a ballot or a

sample ballot, which is drafted, printed, and disseminated by and at the expense of county boards of elections, the designating petitions are drafted, printed, and circulated by and at the expense of the candidates. Although Section 6-132 of New York's Election Law details the necessary components of designating petitions and provides a suggested format, id. ("Each sheet of a designating petition shall . . . contain the following information and shall be in substantially the following form . . . ."), such regulation is not the equivalent of Defendants "providing" the petitions within the meaning of the Voting Rights Act. See Padilla v. Lever, 463 F.3d 1046, 1051 (9th Cir. 2006) (finding that California was not obligated to provide recall petitions in Spanish because "[t]he fact that, under CAL. ELEC. CODE § 11041(a), the Secretary of State 'provides' the format does not mean that the State 'provides' the petitions themselves within the meaning of the Voting Rights Act"); cf. Gerena-Valentin v. Koch, 523 F. Supp. 176, 177 (S.D.N.Y. 1981) (dismissing claims under the Voting Rights Act and 42 U.S.C. § 1983 arising out of the government's failure to provide bilingual petitions); Montero v. Meyer, 861 F.2d 603, 609 (10th Cir. 1988) (finding that the petition process is not subject to the requirements of Section 1973b(f)(4) because it is not related to the "electoral process"); Delgado v. Smith, 861 F.2d 1489, 1493 (11th Cir. 1988) (similar).

Accordingly, Plaintiffs' claims under 42 U.S.C. §§ 1973b(f)(4), 1973aa-1a(c) are DISMISSED.

b. <u>Selectively Enforced, Vague, and Overbroad</u>

Section 1971(a)(2) provides, in relevant part, as follows:

> No person acting under color of law shall:
>
> (A) in determining whether any individual is qualified under State law or laws to vote in any election, apply any standard, practice, or procedure different from the standards, practices, or procedures applied under such law or laws to other individuals within the same county, parish, or similar political subdivision who have been found by State officials to be qualified to vote; [and]
>
> (B) deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election . . . .

42 U.S.C. § 1971(a)(2). Plaintiffs argue the New York Election Law--specifically the sections regulating the content of designating petitions and objections thereto, N.Y. ELEC. LAW §§ 6-134, 6-152--violates the Voting Rights Act because such sections

are vague, overly broad, and selectively enforced.[21]  There are many issues with Plaintiffs' argument.  <u>First</u>, Section 1971 is not a provision of the Voting Rights Act, but rather a provision of the Civil Rights Acts of 1957 and 1960.  <u>See, e.g.</u>, <u>Thrasher v. Ill. Republican Party</u>, No. 12-CV-4071, 2013 WL 442832, at *3 (C.D. Ill. Feb. 5, 2013).  <u>Second</u>, the weight of authority suggests that there is no private right of action under Section 1971.  <u>See</u> 42 U.S.C. § 1971(c) (providing for suit by the Attorney General); <u>Gilmore v. Amityville Union Free Sch. Dist.</u>, 305 F. Supp. 2d 271, 279 (E.D.N.Y. 2004) ("1971 does not provide for a private right of action by individuals."); <u>Hayden v. Pataki</u>, No. 00-CV-8586, 2004 WL 1335921, at *5 (S.D.N.Y. June 14, 2004) ("[T]his section does not provide for a private right of action and is only enforceable by the United States in an action brought by the Attorney General."), <u>aff'd</u>, ; <u>see also</u> <u>Cartagena v. Crew</u>, No. 96-CV-3399, 1996 WL 524394, at *3 n.8 (E.D.N.Y. Sept. 5, 1996); <u>McKay v. Thompson</u>, 226 F.3d 752, 756 (6th Cir. 2000).  <u>But see</u> <u>Schwier v. Cox</u>, 340 F.3d 1284, 1297 (11th Cir. 2003).  <u>Finally</u>, even if this Court implied a private right of action, Plaintiffs have failed to state a claim because

---

[21] Although not specifically pled in the Amended Complaint, to the extent that Plaintiffs are also arguing that these provisions are unconstitutionally vague, the Second Circuit has explicitly held otherwise.  <u>Tarpley v. Salerno</u>, 803 F.2d 57, 61 (2d Cir. 1986) (citing <u>Pecoraro v. Mahoney</u>, 65 N.Y.2d 1026, 494 N.Y.S.2d 289, 484 N.E.2d 652 (1985)).

the sections of New York's Election Law at issue do not qualify or limit an individual's ability to vote in any election[22]--thus Section 1971 is inapplicable here.

Accordingly, Plaintiffs' claims under 42 U.S.C. § 1971(a)(2)(A)-(B) are DISMISSED.

c.  Prohibited Test or Device

Finally, Plaintiffs argue that designating petition process is so burdensome that it constitutes a "test or device" prohibited by the Voting Rights Act.  The County Defendants argue that this claim must be dismissed because, inter alia, the sections of New York's Election Law at issue do not create a "test or device" as defined by the Voting Rights Act.  The Court agrees.[23]

---

[22] Plaintiffs make a convoluted and misguided argument that the designating petition process impairs an individual's right to vote for election commissioners because only elected party committee members can vote for election commissioners.  (Am. Compl. ¶ 12.)  In other words, if one cannot complete the designating petition process, one cannot get elected to a party position and consequently cannot "vote" for the election commissioners.  However, as the Court previously stated, election commissioners are appointed by the county legislature not elected by party committee members, see N.Y. ELEC. LAW § 3-204, and although party committee members "vote" on which individual the party will recommend to the legislature, the Court finds that such "voting" does not constitute an election within the meaning of Section 1971.

[23] Although this argument was raised for the first time in the County Defendants' reply brief, it is within the Court's discretion to consider it.  See Ruggiero v. Warner-Lambert, 424 F.3d 249, 252 (2d Cir. 2005).  The Court exercises its discretion here because Plaintiffs preemptively discussed this

53

Section 1973aa provides that:

> (a) No citizen shall be denied, because of his failure to comply with any test or device, the right to vote in any Federal, State, or local election conducted in any State or political subdivision of a State.

> (b) As used in this section, the term "test or device" means any requirement that a person as a prerequisite for voting or registration for voting (1) demonstrate the ability to read, write, understand, or interpret any matter, (2) demonstrate any educational achievement or his knowledge of any particular subject, (3) possess good moral character, or (4) prove his qualifications by the voucher of registered voters or members of any other class.

42 U.S.C. § 1973aa; see also id. § 1973b.  Thus, a "test or device" is defined as a "prerequisite for voting or registration for voting."  Sections 6-134 and 6-154 of the Election Law, however, do not prevent anyone from voting or registering to vote, see Gould v. Schneider, No. 10-CV-3265, 2011 WL 777897, at *4 (C.D. Ill. Feb. 28, 2011) (finding that a statute requiring would-be candidates to submit a petition containing 25,000 signatures in order to be placed on the ballot does not violate 42 U.S.C. § 1973aa because "that section deals with the denial of the right to vote, not the right to be a candidate on the

---

argument in their opposition brief and it is patently frivolous. See Fitzgerald v. First E. Seventh St. Tenants Corp., 221 F.3d 362, 364 (2d Cir. 2000) ("[D]istrict courts may dismiss a frivolous complaint sua sponte even when the plaintiff has paid the required filing fee.").

ballot"), <u>aff'd</u>, 448 F. App'x 615 (7th Cir. 2011), nor do Plaintiffs allege that these sections prevent them from voting, <u>but</u> <u>see</u> <u>supra</u> note 22.

Accordingly, Plaintiffs' claims under 42 U.S.C. § 1973aa are DISMISSED.

V.    <u>Leave to Replead</u>

Although Plaintiffs have not requested leave to replead, the Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." <u>Hayden v. Cnty. of Nassau</u>, 180 F.3d 42, 53 (2d Cir. 1999); <u>see</u> <u>also</u> FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). "However, a district court has the discretion to deny leave to amend where there is no indication from a liberal reading of the complaint that a valid claim might be stated." <u>Perri v. Bloomberg</u>, No. 11-CV-2646, 2012 WL 3307013, at *4 (E.D.N.Y. Aug. 13, 2012) (citing <u>Chavis v. Chappius</u>, 618 F.3d 162, 170 (2d Cir. 2010)). Because, as explained above, all of Plaintiffs' claims fail as a matter of law, leave to replead would be futile. Accordingly, leave to replead is DENIED, and the Amended Complaint is DISMISSED WITH PREJUDICE.

<u>CONCLUSION</u>

For the foregoing reasons, the motions to dismiss are GRANTED and all other motions are DENIED. The Clerk of the

Court is directed to mail a copy of this Memorandum and Order to each of the pro se Plaintiffs and to mark this matter CLOSED.

                                          SO ORDERED.


                                          /s/ JOANNA SEYBERT_____
                                          Joanna Seybert, U.S.D.J.

Dated:    June 18, 2013
          Central Islip, NY